IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**COURTNEY TURNER,**
**ROBERT ST. JOHN, and**
**JONATHAN HEIL**
on behalf of themselves and
all others similarly situated,

                          Case No. 3:11-cv-00092-wmc

        Plaintiffs,

  vs.

**SUPERIOR SATELLITE SERVICES, INC.**
**CHRIS GNETZ,**
**SCOTT NEUMAN,**

        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SANCTIONS

      Plaintiffs, individually and on behalf of the putative classes of similarly situated individuals, by Hawks Quindel, S.C., Gingras, Cates & Luebke, S.C., and Axley Brynelson, LLP, respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Sanctions in the above-captioned matter.  This motion is based on this Court's inherent power to control this litigation, the declarations of Robert St. John, Marshall Hood, Courtney Turner and Attorney Heath P. Straka, the file and record of these proceedings, and the following grounds.

### INTRODUCTION

      This is a FLSA collective action and Rule 23 state law class action seeking recovery of overtime wages on behalf of state law and national classes of Superior Satellite installation technicians and area managers.  Plaintiffs' Complaint was

filed on February 11, 2011. After Plaintiffs' filed their complaint, Defendants improperly contacted Plaintiffs' class representative St. John (by threatening to stop giving him work as a technician if he continued to participate in the lawsuit), class representative Turner (by terminating his employment), and former class representative Mozo (by offering him a pay increase) in a direct effort to dissuade them from participating in this case. Through this motion, Plaintiffs respectfully request that Defendants be sanctioned for this improper conduct, which included threats and inappropriate inducements that interfered with the orderly administration of the class process.

The policies that underscore Rule 23 and the collective action procedure are abused when employers attempt to dissuade class representatives or potential opt-in class members from participating in the lawsuit. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). In fact, "unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice." *Id.* at 790-791. *Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782 (E.D. La. 1977).

It is because of the potential for abuse and adverse administration of justice, that "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co.*, 452 U.S. at 100. Sanctions are appropriate where, as here, the employer improperly threatens and offers inducements to dissuade class representatives from further participation in the lawsuit. This concern is

particularly acute at this time, as the parties prepare to commence the conditional certification process.

Through this motion, Plaintiffs request that this Court use its inherent power to sanction Defendants. This Court should grant Plaintiffs' motion for several reasons. First, there is direct proof that Defendants threatened to stop providing technician work to Plaintiff Robert St. John if he continued to be a part of this lawsuit. Second, there is direct proof that Defendants offered to elevate Carlos Mozo (while participating as a class representative) to a higher pay scale, and that Mozo soon thereafter withdrew from the suit. Third, there is direct proof that after initiating this lawsuit Defendants contacted Courtney Turner and told him he was "done." Although Defendants later recanted on that statement and once again gave Turner work, it was at such a low volume as compared to before the initiation of the lawsuit, that Turner was forced to look for other work. Also, Defendants informed Turner that he would no longer be classified as an area manager and would receive a lower piece rate wage. Finally, the egregious and irreparable nature of Defendants' actions demonstrate that sanctions are necessary to deter future misconduct, including misconduct during the conditional certification process, and to protect the class members from undue influence.

Plaintiffs respectfully request that this Court sanction Defendants by ordering them to pay a monetary sanction of no less than $50,000, along with Plaintiffs' attorney's fees and costs in making this motion; an order declaring this opt-in class under the Fair Labor Standards Act, is now an opt-out class; an order

tolling the applicable statute of limitations; and an order that a notice[1] be sent to all putative class members, highlighting the fact that retaliation for participating in this lawsuit is prohibited and ordering Defendants to pay the costs and expenses of sending such notice; an order prohibiting Defendants from having any communications with class representatives and putative class members about this case; and an order requiring Defendants to immediately produce a list of all putative class members with contact information to facilitate the mailing of the above-referenced notice.

## FACTS

Plaintiffs filed this collective action and class action complaint on February 4, 2011. (Dkt. 1). Plaintiffs' Complaint seeks payment of wages and overtime wages on behalf of state law and national classes of Superior Satellite installation technicians and Superior Satellite area managers (or "FSMs") pursuant to Minn. Stat. § 177.24, § 177.25 and 29 U.S.C. § 216(b). (*Id.* at ¶¶ 6-9). Plaintiffs also seek to represent a class of technicians from whom improper wage deductions were made, and also seek a civil penalty for Defendants' failure to maintain proper employment records.

Originally the class representatives were: Courtney Turner ("Turner"), representing the Collective Area Manager Overtime Wage Class and the Collective Area Manager Unpaid Wage Class on behalf of himself and other similarly situated employees pursuant to 29 U.S.C. § 216(b); Carlos Mozo ("Mozo"), representing the Collective Satellite Installation Technician Overtime Wage Class and the Collective Satellite Installation Technician Unpaid Wage Class on behalf of himself and other

---

[1] Attached as Exhibit A is Plaintiffs' Proposed Notice.

similarly situated employees pursuant to 29 U.S.C. § 216(b); and, Jonathon Heil ("Heil"), representing the Minnesota Overtime Class, the Minnesota Unpaid Wage Class, and the Minnesota Unlawful Deduction Class on behalf of himself and other similarly situated employees pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Dkt. 1).

On May 6, 2011, however, Plaintiffs filed a Motion to Substitute Party and to Amend The Caption after Mozo unexpectedly and without explanation opted out as class representative. (Dkt. 6). Robert St. John ("St. John") agreed to take over Mozo's representation of the Collective Satellite Installation Technician Wage Classes. (*Id.*). The reasons why Mozo opted-out as class representative were not only unknown to the other class representatives and putative class members, but also Plaintiffs' counsel. (H. Straka Aff.). In fact, Mozo never contacted Plaintiffs' counsel to inform them that he intended to opt out as class representative. (*Id.*). Plaintiffs' counsel first learned of Mozo's decision through Defendants' counsel in April of 2011. (*Id.*).

As more facts unfolded, it became clear that Defendants enticed Mozo to opt out as class representative. Marshall Hood worked as a National Operations Manager for Superior in the Lake Elmo office in Minnesota until May 28, 2011. (Hood Dec. ¶ 2). Hood worked in the Lake Elmo office with Chris Gnetz ("Gnetz," the Owner of Superior Satellite) and Scott Neuman ("Neuman," the Vice-President of Operations). (*Id.*). Neuman and Gnetz are named individually as Defendants in this lawsuit. In April of 2011, Hood was on a conference call that included Gnetz,

Neuman, and Mozo. (*Id.* at ¶ 3). During the conference call, Gnetz, Neuman, and Mozo discussed this lawsuit. (*Id.* at ¶ 4). Gnetz and Neuman told Mozo that he was doing a great job as a technician for Superior in Wisconsin and they intended to elevate him to the highest pay scale for technicians (other than the pay scale used for Chris Gnetz' brother). (*Id.*). By May 6, 2011, Mozo no longer represented the class in the lawsuit, and by May 28, 2011 Defendants elevated him to the higher pay scale. (Dkt. 6; Hood Dec., ¶ 5).

In May of 2011, Hood overheard a phone conversation between St. John and Neuman. (*Id.* at ¶ 7). Hood heard both St. John's and Neuman's voices during the phone conversation, since his office was adjacent to Neuman's. (*Id.*). Neuman informed St. John that if he continued to be involved in this lawsuit, he would lose work as a technician for Superior. (*Id.*). Hood's recollection of the call was confirmed by St. John. (St. John Declaration, ¶ 4). Further, Neuman told St. John that he could not believe that St. John joined this lawsuit and decided to take Turner's side. (St. John Dec., ¶ 3). St. John believed the threats from Defendants because he believed Superior stopped giving Turner work after he initiated this lawsuit. (*Id.* at ¶ 5). Although St. John continues to get limited work as a satellite installation technician for Superior, he fears Defendants will stop giving him work in the near future, based on his belief of what Defendants did to Turner. (*Id.* at ¶ 6).

St. John's belief that Turner had received less work after the initiation of this lawsuit was confirmed by Turner. (Turner's Declaration, ¶ 6). Shortly after the initiation of this lawsuit, on or around February 14, 2011, Gnetz and Neuman

contacted Turner and asked him why he had decided to sue Superior. (Turner's Dec., ¶ 4). When Turner stated that he would like to consult with his lawyers about that question, Gnetz told Turner that he was "done" and asked Turner to turn in his equipment and to complete all paperwork necessary to terminate his relationship with Superior. (*Id.*).

One day later, Neuman and Turner exchanged emails about his termination. (Turner's Dec., ¶ 5). Neuman told Turner that there had been a misunderstanding and that Turner would be receiving work from Superior again, but Turner would no longer be classified as an area manager and he would also be receiving a lower piece rate wage. (*Id.*). Also, Defendants instructed Turner that if he wanted work, he was required to call in every morning to request it; a new requirement that Turner did not have to do before the initiation of this lawsuit. (*Id.*). After the second phone call, Turner did receive some work from Superior, but at a significantly lower volume than before the filing of this lawsuit. (Turner's Dec., ¶ 6). Turner requested to be assigned more work from Superior, but they continued to route him on very few jobs. (*Id.*). Turner's workload with Superior was so low that he was forced to discontinue employment with Superior and look elsewhere for a source of income. (*Id.*).

## ARGUMENT

Defendants' improper contacts with Plaintiffs' class representatives undermines the strong policy considerations that favor the collective action and class action procedure. Plaintiffs cannot properly move forward with the litigation

without court intervention because Defendants' unauthorized contacts have sent a clear message that participation in this lawsuit will not be tolerated by Defendants and will result in adverse employment consequences.. Such misconduct is one of the reasons courts have been given the inherent power to control class actions through the use of sanctions. Plaintiffs respectfully request that this Court use sanctions to put this litigation back on fair ground and also as a demonstration that future misconduct will not be tolerated. Plaintiffs respectfully request this Court grant the following sanctions against Defendants:

    i. ordering Defendants to pay a significant monetary sanction of no less than $50,000, along with Plaintiffs' attorney's fees and costs in making this motion;

    ii. an order declaring that the potential opt-in class members pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), be deemed to have opted-in to this action as of the date of this Notice, thereby treating the opt-in action as an opt-out action, and tolling the applicable statute of limitations;

    iii. order that a notice be sent to all putative class members, highlighting the fact that retaliation for participating in this lawsuit is prohibited and ordering Defendants to pay the costs and expenses of sending such notice;

      iv.    an order prohibiting Defendant officials, officers and managers from having any contact with putative class members about this litigation; and

      v.    an order requiring Defendants to immediately produce a list of all putative class members with contact information to facilitate the mailing of the above-referenced notice.

## I. THE COURT HAS THE POWER TO REGULATE COMMUNICATION EVEN THOUGH THE CLASSES ARE NOT YET CERTIFIED.

This Court has the authority and the obligation, to control communications between the employer and the putative class members even though the classes have not been certified. It is well-settled that a district court has both the "duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co.*, 452 U.S. at 100. The district court's control is to be applied both before and after a class is certified. *See e.g., Wiginton v. Ellis*, 2003 WL 22232907, *2 (N.D. Ill. Sept. 16, 2003) ("this Court has the power to restrict communications between defendants and putative class members before the class is even certified"); *Pruitt v. City of Chicago, Dept. of Aviation*, 2004 WL 1146110, *2 (N.D. Ill. May 20, 2004) ("a court has limited power to restrict communications between defendants and putative class members before the class is even certified").

Although these particular classes have yet to be certified, this Court still has a duty to oversee the litigation and protect both the named plaintiffs and putative

class members. The need to control communications is essential in employment class actions because of the potential for coercion that is inherent in the employer/employee relationship. Therefore, it is not the timing of certification that is important for a district court judge in controlling communication, but rather the potential for abuse and the likely harm that such communications will have on the litigation in the future.

There is no doubt that Neuman and Gnetz communicated improperly with class representatives in this litigation. This Court should use sanctions to send the message that it will not tolerate inappropriate conduct in the course of this litigation, regardless of the fact that the class has not yet been certified.

## II. THE COURT SHOULD SANCTION THE DEFENDANTS IN THIS CASE BECAUSE THE COMMUNICATION WAS COERCIVE IN NATURE.

Sanctions are warranted due to the highly coercive nature of these communications. The Court has the responsibility to supervise its courtroom and the responsibility carries with it the inherent power to impose monetary sanctions. *Naseer v. Trumm*, 2011 WL 1749322, *5 (W.D. Wis. May 6, 2011). The power to impose sanctions is not governed by rule or statute, but by the control necessarily vested in courts to manage their own affairs and to achieve the appropriate disposition of cases. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

A court's inherent power to impose sanctions in response to an employer's improper communications with class representatives is particularly warranted because "if the class and class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive."

10

*Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132, *3 (S.D.N.Y. Sept. 7, 2001). "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of facts, without opportunity for rebuttal. The damage from misstatements would be *irreparable.*" *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985)(emphasis added).

This District Court, in the case of *Sjoblom v. Charter Communications, LLC.*, found that sanctions may be appropriate in certain circumstances, including "communications that coerce prospective class members into excluding themselves from litigation." *Sjoblom v. Charter Communications, LLC.*, 2007 WL 5314916, * 3 (W.D. Wis. Dec. 26, 2007). Similarly, in *Kleiner*, the court found that the defendant's unauthorized communications to class members "obstructed the district court in the discharge of its duty to protect both the absent class and the integrity of the judicial process by monitoring the actions before it." *Id.* at 1202.

In *Belt v. EmCare, Inc.*, the Eastern District of Texas issued severe sanctions against employer's counsel for unauthorized coercive communication with potential class members. *Belt v. EmCare, Inc.*, 299 F. Supp. 2d 664, 666 (E.D. Texas Dec. 18, 2003). The court sanctioned the employer's counsel for sending an unapproved letter to potential opt-in class members. *Id.* The court found that the only purpose of the letter was to discourage potential opt-in class members not to join, and that such a letter would undermine the purposes of the collective action. *Id.* at 669. The court in *Belt* issued a wide variety of sanctions. It required Defendants to disseminate a

detailed corrective notice to all the potential opt-ins, at the employer's cost; it reopened the opt-in period so that the potential opt-in class members had additional time to join after receiving the corrective notice; it awarded plaintiff all costs and attorney's fees in bringing the sanctions motion; and finally, the court reserved the possibility that it would allow putative class members to opt into the class post verdict. *Id.*; (*See also, Gortat v. Capala Bros.*, 2010 WL 1879922 at, * 3-4 (surveying cases and explaining that sanctions from improper communications in collective and class actions have included: significant monetary fines, judicial invalidation of opt-out forms; and the ordering of new notice and opt-in periods); *Kleiner*, 751 F.2d at 1199 (ordering, among other things, $58,577 in fines and disqualification of counsel for improper communications).

In this case, there was not just the potential for coercion, but coercion itself. Defendants have threatened and coerced all of the class representatives other than Heil, who no longer worked for Superior and whom Defendants, therefore, could not as easily threaten or coerce.

Immediately, after learning of this lawsuit, Defendants improperly contacted Turner. They fired him, then backpedalled and returned him to work, then, drastically reduced his workload, and demoted him from an area manager to an installation technician.

Defendants took a different, but equally effective tact with Mozo. While Turner's pay was decreased as a result of this litigation, when Mozo decided to opt out of the litigation he was rewarded by being placed in a higher pay bracket.

Defendants Gnetz and Neuman first discussed the lawsuit with Mozo in April of 2011. At that time, Mozo represented the Collective Satellite Installation Technician Overtime Wage Class and the Collective Satellite Installation Technician Unpaid Wage Class. Gnetz and Neuman told Mozo they have been thinking about moving him into a higher pay bracket. After that conversation, Mozo opted out of the class. The communication that Gnetz and Neuman engaged in with Mozo was no doubt coercive and is therefore the very type of communication that district courts sanction in class action litigation. The clear implication is that the communication enticed Mozo to drop out of the lawsuit..

Not only did Defendants fire Turner and coerce Mozo out of pursuing this suit, they also threatened to stop giving St. John work as a technician for his participating as a class representative. The coercive nature of the communication is clear on its face.

All of the above mentioned case law deals with the *potential* that the communication may be coercive. In this litigation, the statements were coercive. Defendants threatened St. John that he would be punished if he continued to pursue the litigation. This coercive communication between Defendants and St. John is exactly the communication that this Court worried about in *Sjoblom v. Charter Communications, LLC*. Similar to *Sjoblom*, there is an abuse of the class action system of an employer trying to impede litigation by scaring potential members.

With conditional certification on the immediate horizon, it is critical that the Court prevent further improper interference by Defendants with the certification process. This is so because if putative class members believe they will lose their livelihood by opting into this lawsuit, it is obvious that they will be less likely to do so.

Given the foregoing, Plaintiffs respectfully request this Court order the Defendants to pay a significant monetary sanction of no less than $50,000, along with Plaintiffs' attorney's fees and costs in making this motion. Further, because of the coercive nature of the communication and the irreparable harm to the litigation caused by Defendants, Plaintiffs also move the Court for an order declaring that the potential opt-in class members pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), be deemed to have opted-in to this action as of the date of this Notice, thereby treating the opt-in action as an opt-out action, and tolling the applicable statute of limitations. Plaintiff's also request that this Court send a notice to all putative class members, at Defendants' cost, highlighting the fact that retaliation for participating in this lawsuit is prohibited.  Plaintiffs request that this Court order that Defendants have no further communications with class representatives and putative class members regarding this litigation.  Finally, Plaintiffs request that this Court issue an order requiring Defendants to immediately produce a list of all putative class members with contact information to facilitate the mailing of the above-referenced notice.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court grant this Motion for Sanctions.

Respectfully submitted this 19th day of July, 2011.

        **HAWKS QUINDEL, S.C.**
        Attorneys for Plaintiffs

        By: *s/ William E. Parsons*
            William E. Parsons, State Bar No. 1048594
            Email: wparsons@hq-law.com
            David C. Zoeller, State Bar No. 1052017
            Email: dzoeller@hq-law.com
            Post Office Box 2155
            Madison, Wisconsin 53701-2155
            Telephone:  608/257-0040
            Facsimile: 608/256-0236

        **AXLEY BRYNELSON, LLP**
        Attorneys for Plaintiffs

        By: *s/ Michael J. Modl*
            Michael J. Modl, State Bar No. 1011419
            Email: mmodl@axley.com
            Timothy D. Edwards, State Bar No. 1036836
            Email: tedwards@axley.com
            Post Office Box 1767
            Madison, Wisconsin 53701-1767
            Telephone:  608/257-5661
            Facsimile: 608/257-5444

        **GINGRAS, CATES & LUEBKE, S.C.**
        Attorneys for Plaintiffs

        By: *s/ Heath P. Straka*
            Robert J. Gingras, State Bar No. 1002909
            Email: gingras@gcllawyers.com
            Heath P. Straka, State Bar No. 1031351
            Email: straka@gcllawyers.com
            Post Office Box 1808
            Madison, Wisconsin 53701-1808
            Telephone:  608/833-2632
            Facsimile: 608/257-5444