IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

COURTNEY TURNER,
ROBERT ST. JOHN, and
JONATHAN HEIL
on behalf of themselves and
all others similarly situated,

        Plaintiffs,

vs.

SUPERIOR SATELLITE SERVICES, INC.,
CHRIS GNETZ and SCOTT NEUMAN

        Defendants.

Case No. 11-cv-00092

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PETITION FOR ENHANCEMENT PAYMENTS AND CLASS COUNSEL'S COSTS AND ATTORNEYS' FEES**

---

### INTRODUCTION

This is a hybrid action alleging wage and hour claims as a collective action under Sec. 216(b) of the Fair Labor Standards Act ("FLSA") and a Rule 23 class action under the wage and hour laws of the state of Minnesota. This action is also a Rule 23 class action under Minnesota law for alleged unlawful deductions from wages and the alleged unlawful failure to reimburse Minnesota employees for purchases of consumable supplies required in the course of their employment. The parties have been engaged in this litigation since February 4, 2011 and have reached a settlement of all state and federal wage and hour claims and all state wage deduction, including indirect and direct claims, on behalf of approximately 190 former and current employees and alleged independent

contractors of Superior Satellite Services, Inc. ("Superior Satellite") who held the positions of Satellite Installation Technician and Field Service Manager ("FSM").

This case settled for a total of $750,000.00. Class Counsel accepted the case, pursuant to fee agreements with the Named Plaintiffs, under which Class Counsel would receive the greater of either actual attorneys' fees plus costs or a 33.33% contingency fee, plus costs, bearing the entire risk in the event that there was no recovery. Class Counsel's actual attorneys' fees and costs to date are in the amount of $391,672.00. Class Counsel seeks attorneys' fees in the amount of $300,000.00, inclusive of costs. Class Counsel invested more than 1,400 hours in prosecuting this litigation. Class Counsel agreed to be responsible for all costs in the event of an adverse result. Class Counsel faced significant risks in this litigation, based upon defenses asserted by Defendants as well as the risks incident to obtaining class certification, particularly given the developing law in this area in light of recent United States Supreme Court authority.

Class Counsel respectfully request that the Court award costs and fees in the amount of $300,000.00. This amount, although less than actual attorneys' fees and costs, is consistent with market rates for this geographic area and recognizes the risks assumed by Class Counsel in litigating this matter.

Throughout this litigation, Class Counsel received assistance from class representatives Courtney Turner, Robert St. John and Jonathan Heil. The type and degree of assistance provided by the class representatives varied as discussed below. Consistent with applicable law related to enhancement payments for class representatives, Plaintiffs seek enhancement payments totaling $25,000.00, which shall be allocated as follows

based upon the amount of assistance provided by the class representatives: Courtney Turner - $12,500.00; Robert St. John - $7,500.00; and Jonathan Heil - $5,000.00.

## STATEMENT OF FACTS

### I. PROCEDURAL HISTORY

Courtney Turner, Carlos Mozo, and Jonathan Heil filed this class and collective action lawsuit against Defendant Superior Satellite on February 4, 2011. Dkt.1.[1] Plaintiffs' Complaint alleged that Defendant failed to pay their satellite installation technicians ("technicians") and FSMs minimum wages and overtime wages in violation of Minnesota law and the federal Fair Labor Standards Act (FLSA). Dkt.1. Plaintiffs' Complaint further alleged that Defendant made unlawful deductions from Minnesota technicians' pay in violation of Minnesota law. Id. On June 28, 2011, Plaintiffs filed their First Amended Complaint, adding Chris Gnetz and Scott Neuman as party defendants.

Shortly after filing their Complaint, Plaintiffs alerted the Court that they intended to attempt to resolve the dispute through early mediation. Dkt. 3. The parties attended a one-day mediation in Minneapolis, Minnesota, on May 16, 2011. However, this initial attempt at mediation did not result in resolution of the dispute. (Dkt. 92, Declaration of Attorney William E. Parsons in Support of Motion for Preliminary Approval of Class Action Settlement ("Parsons Preliminary Approval Dec") at ¶2).

Following this first attempt at mediation, the parties stipulated to conditional certification of the Plaintiffs' 29 U.S.C. § 216(b) collective classes. Dkt. 49. Subject to that stipulation, Defendants agreed to produce the "Satracker" data for each individual

---

[1] Plaintiff Carlos Mozo withdrew his consent to participate in the lawsuit on May 9, 2011. Dkt. 8-2. By motion, Plaintiff Robert St. John was substituted for Carlos Mozo as a Representative Plaintiff. Dkt. 5.

3

who opted into the class and for whom Satracker data was available. The "Satracker" system was used by Superior technicians and FSMs during the course of their employment. This electronic system captured time stamps throughout the course of a technician or FSM's day, and was used by Plaintiffs to create a damages model for the class. Since Defendants had no time-keeping system other than Satracker, this was the best source of data available to reconstruct the hours allegedly worked by the technicians and FSMs.

During the "opt-in" period, 73 of 395 eligible FLSA class members joined this action. (Parsons Preliminary Approval Dec. ¶4). Shortly after the close of the opt-in period, on November 29, 2011, the parties attempted to mediate the dispute a second time. With the advantage of access to Satracker data and a complete damages model, the parties were able to reach a settlement in this second mediation session. (Parsons Preliminary Approval Dec. ¶5).

## II. SETTLEMENT BACKGROUND

Extensive arm's-length settlement negotiations have taken place in this matter. Said negotiations took place before the parties' first mediation session on May 16, 2011 and continued through resolution at the second mediation session, six-and-a-half months later, on November 29, 2011. (Parsons Preliminary Approval Dec. ¶6).

Much of the time and effort in these negotiations has been spent by the parties in their mutual efforts to recreate the work hours for a group of employees and alleged independent contractors for whom accurate time records do not exist. This is because the employees and alleged independent contractors, who are members of the Plaintiffs' putative classes, were paid on a piece rate basis, and not with regard to the number of

4

hours they worked. As such, the precise number of work hours was not recorded and has been a source of contention throughout the litigation

Prior to the first mediation, Defendants produced class-wide data showing the total number of weeks worked by many individual members of the class and the amount of pay received by each putative class member during each week of a two-year period. Defendants also produced data regarding the number and amount of deductions taken from Minnesota class members' pay, allegedly without written authorization during a two-year period. (Parsons Preliminary Approval Dec. ¶7). This data, however, failed to provide any insight into the actual number of hours worked by the technicians and FSMs.

Finally, prior to the first attempted mediation, Defendants allowed Plaintiffs access to the "Satracker" data for Courtney Turner, one of the Named Plaintiffs. (Parsons Preliminary Approval Dec. ¶8). As noted above, this electronic system tracks the type of activity the FSMs and technicians were performing each day during their tenure with Superior and associates a time stamp with the activity. (Parsons Preliminary Approval Dec. ¶9). Plaintiffs used the Satracker data from Courtney Turner to create a damages model prior to the first mediation. This work involved, among other things, totaling the hours recorded by Turner in Satracker manually, sorting the hours worked by the various pay periods, determining the amount of alleged unpaid overtime hours, and calculating the value of same.

After the first mediation attempt failed, and after the parties' agreed to conditionally certify the Plaintiffs' 29 U.S.C. § 216(b) collective classes, Defendants began a rolling production of the Satracker data for each individual who opted into the class. (Parsons Preliminary Approval Dec. ¶12). Plaintiffs then labored to run an analysis

5

similar to that run on Courtney Turner's Satracker data for each individual for whom Satracker data was produced. This process, completed collaboratively by the three law firms representing the Plaintiffs, took hundreds of hours to complete, and formed the basis for the Plaintiffs' damages model at the second mediation. (Parsons Preliminary Approval Dec. ¶13).

On November 29, 2011, the parties attended their second full day of mediation with Robert Reinhart, a partner at Dorsey & Whitney LLP, and an experienced wage and hour class action mediator. (Dkt. 91, Declaration of Robert Reinhart at ¶1). This mediation session lasted ten hours, in addition to the seven hours exhausted in the first mediation session in May. (Id. at ¶7). Settlement discussions were protracted, highly contested, and were conducted at arm's length. (Id. at ¶9). Although the parties' initial positions differed widely on a variety of issues, the parties were able to reach agreement on the terms of a proposed settlement. (Id.)

The Named Plaintiff for the FLSA Manager class, Courtney Turner, has contributed substantial time and work in securing a settlement on behalf of the classes he represents. Mr. Turner, who now works outside of Wisconsin, has traveled to Minnesota to attend mediation and has traveled back to Wisconsin to attend a court hearing which was ultimately canceled. Further, Turner provided invaluable interpretation of Satracker records which ultimately allowed the Plaintiffs' team to create an accurate damages model. As such, the parties request approval of an enhancement payment of $12,500.00 to Mr. Turner in addition to any amount allocated to him as damage.

Messrs. Heil and St. John also provided assistance that led to the resolution of the case. Mr. St. John traveled to Wisconsin shortly after his father's death to attend a court

6

hearing on the Plaintiffs' motion for sanctions (which was ultimately cancelled). Mr. Heil provided valuable information on Defendants' deduction policies which added substantial value to the Minnesota class member's claims. As such, the parties request approval of an enhancement payment of $7,500.00 to Mr. St. John and $5,000.00 to Mr. Heil in addition to any amount allocated to them as damages.

Each of the Plaintiffs, on behalf of himself and the putative class members, has executed a fee agreement retaining Hawks Quindel, S.C., Gingras, Cates & Luebke and Axley Brynelson, LLP as Class Counsel. (Parsons Dec., ¶ 6); (Straka Dec., ¶ 6); (Modl Dec., ¶ 6). Attorneys Parsons, Straka and Modl supervised the efforts of other attorneys and legal professionals in their respective offices. (Parsons Dec., ¶7); (Straka Dec., ¶7); (Modl Dec., ¶7). Additionally, John Mitby oversaw a number of critical issues in the case, including mediation, settlement discussions and overall strategy. (Modl Dec. ¶8).

Pursuant to the fee agreements, Class Counsel agreed to assume the risk for all actual costs in the litigation in the event Plaintiffs were unsuccessful. (Parsons Dec., ¶8); (Straka Dec., ¶8); (Modl Dec., ¶9). In light of this risk, and the significant undertaking implicit in this class action lawsuit, Plaintiffs agreed to a payment of the greater of actual attorneys' fees plus costs or 33.33% of the gross recovery (plus costs). (Parsons Dec., ¶9); (Straka Dec., ¶9); (Modl Dec., ¶10). Although Class Counsel is entitled, under the fee agreements to request actual attorneys' fees and costs of $391,672.00, they are instead requesting an reduced award of $300,000.00. (Parsons Dec., ¶10); (Straka Dec., ¶10); (Modl Dec., ¶11). Although, under the terms of the fee agreements, Class Counsel are entitled to attorneys' fees *plus actual costs*, Class Counsel request that their costs be

7

absorbed into the combined fees and costs request instead of requesting a separate award of actual costs. (Parsons Dec., ¶10); (Straka Dec., ¶10); (Modl Dec., ¶11).

As part of their fee Petition, Class Counsel have submitted declarations from lead counsel Parsons, Straka, and Modl, three experienced attorneys in employment law, including wage and hour law, class action work, and federal court practice. (Parsons Dec., ¶11); (Straka Dec., ¶11); (Modl Dec., ¶12). Additionally, Class Counsel have submitted declarations from attorneys in the legal community who regularly litigate wage-and-hour cases in Wisconsin before this Court and who are familiar with the market rate for attorneys' fees in such cases. These practitioners, as well as lead Class Counsel, have averred in their respective declarations that an award of $300,000.00 for combined attorneys' fees and costs, is consistent with the appropriate market rate for similar hybrid FLSA and Rule 23 class actions in the Western District of Wisconsin. (Parsons Dec., ¶13); (Straka Dec., ¶13); (Modl Dec., ¶14); (Johnson Dec., ¶8); (Halstead Dec., ¶16); (Urban Dec., ¶8).

As noted above, on November 29, 2011, the parties met for a second session of settlement discussions in an effort to resolve this matter. (Parsons Dec., ¶14); (Straka Dec.,14); (Modl Dec., ¶15). During the course of these discussions, Mr. Gnetz discussed the financial condition of Superior Satellite and its limited resources. (Parsons Dec., ¶15); (Straka Dec., ¶15); (Modl Dec., ¶16). Additionally, Gnetz advised that, if necessary, he and Superior Satellite may need to pursue bankruptcy in the event of a large enough judgment in this matter against the Defendants. (Parsons Dec., ¶15); (Straka Dec., ¶15); (Modl Dec., ¶16). The parties reached a settlement of all claims at the November 29, 2011 mediation session. (Parsons Dec., ¶16); (Straka Dec., ¶16); (Modl

8

Dec., ¶17). The settlement reflects the results of an extensive analysis of both the merits of Plaintiffs' claims, the strengths of Defendants' substantive defenses, the risks inherent in class certification and decertification, and the ability of the defendants to pay a judgment. (Parsons Dec., ¶16); (Straka Dec., ¶16); (Modl Dec., ¶17).

### A. Work Performed By Class Counsel.

Class Counsel and legal professionals associated with Class Counsel have devoted more than 1,400 hours on behalf of the Plaintiff classes and have incurred approximately $15,300.00 in costs.[2] (Parsons Dec., ¶17); (Straka Dec., ¶17); (Modl Dec., ¶18). Class Counsel reasonably anticipates that they will incur an additional $15,000.00 in costs administering the settlement, paying Attorney Reinhart for the second mediation session and addressing class members' questions regarding the settlement. (Parsons Dec., ¶18); (Straka Dec., ¶18); (Modl Dec., ¶19). Class Counsel will administer the settlement and accordingly anticipate that they will incur additional attorneys' fees in the amount of $20,000.00 related to settlement administration. (Parsons Dec., ¶19); (Straka Dec., ¶19); (Modl Dec., ¶20).

Class Counsel's legal services have included detailed investigations of potential claims against Superior Satellite. This included numerous in-person and telephonic conferences with Plaintiffs and other putative class members. (Parsons Dec., ¶20); (Straka Dec., ¶20); (Modl Dec., ¶21). Class Counsel spent substantial time and effort researching applicable wage and hour and wage deduction law under the FLSA and Minnesota state law. (Parsons Dec., ¶21); (Straka Dec.,21); (Modl Dec., ¶ 22). Class

---

[2] The costs number does not include the mediator's cost for the second mediation in the amount of approximately $4,325.00 or the costs incident to administration of the settlement.

9

Counsel prepared the complaint as well as amended pleadings in this matter. (Parsons Dec., ¶22); (Straka Dec., ¶22); (Modl Dec., ¶23).

Class counsel also spent considerable time and resources devoted to the sanctions motion that they brought on behalf of the class. (Parsons Dec., ¶23); (Straka Dec., ¶23); (Modl Dec., ¶24). Ultimately, the parties were able to reach an agreement regarding the issues surrounding the sanctions motion, and a second Notice was sent to the putative class members. (Parsons Dec., ¶24); (Straka Dec., ¶24); (Modl Dec., ¶25).

Class Counsel spent significant time reviewing payroll records and Satracker data in an effort to prepare an accurate analysis of the potential recoverable damages in this case. (Parsons Dec., ¶25); (Straka Dec., ¶25); (Modl Dec., ¶26). Class Counsel spent substantial time meeting and talking with class members and putative class members and obtaining declarations in support of Plaintiffs' liability and damages theories in this matter. (Parsons Dec., ¶26); (Straka Dec., ¶26); (Modl Dec., ¶27).

Defendants did not maintain timekeeper records for time actually spent by Plaintiffs and putative class members performing work on behalf of Defendants. (Parsons Dec., ¶27); (Straka Dec., ¶27); (Modl Dec., ¶28). Class Counsel spent a significant amount of time attempting to recreate time records based upon payroll data, and Satracker and e-connect data provided by Defendants. (Parsons Dec., ¶28); (Straka Dec., ¶28); (Modl Dec., ¶29). Class Counsel spent numerous hours analyzing and preparing appropriate spreadsheets and the damages analysis in this matter. (Parsons Dec., ¶29); (Straka Dec., ¶29); (Modl Dec., ¶30).

Class Counsel also spent significant time and resources on the issue whether the putative Plaintiff classes were suitable for class certification. (Parsons Dec., ¶30);

(Straka Dec., ¶30); (Modl Dec., ¶31). This included reviewing applicable law, reviewing a significant amount of payroll and Satracker data and contacting numerous putative class members. (Parsons Dec., ¶31); (Straka Dec., ¶31); (Modl Dec., ¶32).

Throughout the case, Class Counsel met regularly, both in person and telephonically, and discussed the status of pending matters and analyzed strategies to continue to move the case forward. (Parsons Dec., ¶32); (Straka Dec., ¶32); (Modl Dec., ¶33). Lead counsel for the Plaintiffs delegated appropriate tasks to various team members. (Parsons Dec., ¶33); (Straka Dec., ¶33); (Modl Dec., ¶34).

Class Counsel's obligations to the class members will continue into the future. (Parsons Dec., ¶34); (Straka Dec., ¶34); (Modl Dec., ¶35). This will include the need to perform settlement administration tasks as well as participation in the final approval hearing. Assuming that the settlement receives preliminary approval, Class Counsel's obligations will continue during the settlement administration process, through the final hearing and for many months thereafter dealing with questions and concerns of class members, including tax-related concerns. (Parsons Dec., ¶34); (Straka Dec., ¶34); (Modl Dec., ¶35). Additional fees will be incurred relating to contacts with class members regarding the settlement. (Parsons Dec., ¶35); (Straka Dec., ¶35); (Modl Dec., ¶36). In Class Counsel's experience, there are a significant number of phone calls and other contacts from class members during the settlement administration process, prior to the Final Approval Hearing and after disbursements have been mailed. (Parsons Dec., ¶36); (Straka Dec., ¶36); (Modl Dec., ¶37).

## ARGUMENT AND AUTHORITIES

### I.     CLASS REPRESENTIVE ENHANCEMENT PAYMENTS.

The Settlement Agreement provides that each class representative may seek a one-time enhancement payment for all work and services that he contributed to the case and for assuming certain risks involved with the litigation. The requested enhancement payments are as follows: Courtney Turner ($12,500.00); Robert St. John ($7,500.00); and Jonathan Heil ($5,000.00).

Plaintiffs seek different amounts of enhancement payments because of differences in the amount of activity engaged in by each plaintiff and the amount of time during which each plaintiff was a named party.

The Named Plaintiff for the FLSA Manager class, Courtney Turner, has contributed substantial time and work in securing a settlement on behalf of the classes he represents. Mr. Turner, who now works outside of Wisconsin, has traveled to Minnesota to attend mediation and has traveled back to Wisconsin to attend a court hearing which was ultimately canceled. Further, Turner provided invaluable interpretation of Satracker records which ultimately allowed the Plaintiffs' team to create an accurate damages model. As such, the parties request approval of an enhancement payment of $12,500.00 to Mr. Turner in addition to any amount allocated to him as damage.

Messrs. Heil and St. John also provided assistance that led to the resolution of the case. Mr. St. John traveled to Wisconsin shortly after his father's death to attend a court hearing on the Plaintiffs' motion for sanctions (which was ultimately cancelled). Mr. Heil provided valuable information on Defendants' deduction policies which added substantial value to the Minnesota class member's claims. As such, the parties request

approval of an enhancement payment of $7,500.00 to Mr. St. John and $5,000.00 to Mr. Heil and St. John in addition to any amount allocated to them as damages.

Plaintiffs therefore assert that the requested enhancement payments are appropriate and equitable. *See Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (awarding $20,000 to named class representatives noting "the propriety of allowing modest compensation to class representatives seems obvious").

Plaintiffs assert that, unlike unnamed class members, who are the passive beneficiaries of the class representatives' efforts on their behalf, the named class representatives agreed to be the subject of discovery, including making themselves available as witnesses at deposition and trial, and subjecting themselves to other obligations of named parties. Plaintiffs assert that the requested enhancement payments, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (courts routinely approve enhancement payments to compensate named plaintiffs for services they provide); *see also* Manual for Complex Litigation (Fourth) § 21.62 n. 971 (2004) ("*Manual for Compl. Lit.*") (enhancement payments may be "warranted for time spent meeting with class members, monitoring cases, or responding to discovery").

Defendants do not oppose plaintiffs' requests for the specified enhancement payments.

    **II.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS CONSISTENT WITH THE REASONABLE MARKET RATE GIVEN THE RISKS OF THIS LITIGATION.**

    **A.    Plaintiffs Are Entitled to Attorneys' Fees and Costs.**

Plaintiffs are entitled to fees in this lawsuit, which was brought as an FLSA collective action and a Rule 23 state wage and hour class action under the laws of Minnesota. This action also includes class claims under Minnesota law for alleged improper wage deductions and failure to reimburse Minnesota employees for purchases of consumable supplies required in the course of their employment.

The purpose of Section 216(b) of the FLSA is to ensure "effective access to the judicial process by providing attorneys fees for prevailing plaintiffs with wage and hour grievances." Roofers Local 317 v. G & M Roofing & Sheet Metal Co., 732 F.2d 495, 502 (6th Cir. 1984). "Congress intended that the wronged employee should receive his full wages . . . without incurring any expense for legal fees or costs." Id. Consistent with these policies, in an action under the FLSA, the district court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Similarly, attorneys' fees and costs are recoverable under the state wage and hour statutes at issue in this litigation. Minn. Stat. § 177.27(10).

Plaintiffs are the prevailing party in this litigation, and they are entitled to an award of attorneys' fees. A plaintiff "prevails" when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-112 (1992). This relief may come in the form of an enforceable judgment, a consent decree, or a settlement. Id.; *see also* Rule 23(h), Fed. R. Civ. P. ("In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."). Here, Plaintiffs have secured

14

substantial relief, as evidenced by the terms of the proposed Settlement Agreement. Accordingly, Plaintiffs are the prevailing party and are entitled to an award of attorneys' fees and costs under the FLSA and applicable state law.

### B. Class Counsel's Request for Fees Is Reasonable.

This court has broad discretion in deciding whether a requested fee is reasonable in the class action context. 7B Alan Wright et al., Federal Practice and Procedure: Federal Rules of Civil Procedure, § 1803.1 (3d ed. & 2008 Supp.). The Seventh Circuit uses a "market-based approach" to determine the amount to be awarded as reasonable attorneys' fees. Under this approach, the district court "is required to estimate the terms of a contract [that] private plaintiffs would have negotiated with the attorneys at the outset of the case, with reference to benchmarks, such as the actual agreements between the class members and their attorneys, data from other suits, and auctions for legal services." 7B Charles Alan Wright et al., Federal Practice and Procedure: Federal Rules of Civil Procedure, § 1803.1 (3d ed. & 2008 Supp.). In applying this framework, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." Steinlauf v. Continental Illinois Corp., 962 F.2d 566, 568 (7th Cir. 1992). The "touchstone of the analysis" is what paying clients would have compensated the attorneys in an open market for legal services: "The object in awarding a reasonable attorney's fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible." Steinlauf at 962 F.2d at 572. Ultimately, "Class Counsel are entitled to the fee they would have received had they handled a similar suit

15

on a contingent fee basis, with a similar outcome, for a paying client." Steinlauf at 962 F.2d at 572-73 (noting that "in personal injury suits the usual range for contingent fees is between 33 and 50 percent . . ."). This can be proven through "testimony or statistics concerning the fee arrangements in commercial litigation comparable to the present suit." Id.

In the instant case, Class Counsel seek an award of attorneys' fees and costs that is consistent with what a willing client would agree to pay an attorney to take this type of case at the inception of the representation. Specifically, Class Counsel seek an award of fees and costs that, although representing forty percent (40%) of the total settlement proceeds, represents only 76.6% of actual attorneys' fees and costs incurred to date in this litigation. This request is supported by the underlying fee agreements, in which Plaintiffs agreed to pay Class Counsel the greater of either actual attorneys' fees and costs or on a 33.33% contingency basis, plus actual costs. As clearly set forth in the accompanying declarations of Attorneys William Parsons, Heath Straka, Michael Modl, Aaron Halstead, Jay Urban, and Larry Johnson, the requested amount is consistent with the market rate for legal services in similar complex litigation in the Dane County Wisconsin area.

There are other compelling factors that support the relief requested in this petition. This case yielded a favorable result for class members, who will recover approximately $2,250.00 per class member on average. More importantly, this result followed in the face of substantial risk. By definition, complex nationwide class-action litigation is a risky venture. *See* White v. Sundstran Corp., 256 F.3d 580, 586 (7th Cir. 2001)(" . . . attorneys already supply risk-bearing services in class actions. They invest legal time on contingent fee, taking the risk of failure in exchange for a premium award if

the class prevails."). Many cases are decided (and dismissed) at the certification (or decertification) stage given the exacting standard of proof presented by Rule 23 and 29 U.S.C. § 216(b). *See* e.g., Mooney v. Aramco Services Co., 54 F.3d 1207, 1214 (5th Cir. 1995); In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.2d 283, 283, 321 (3d Cir. 1998)(noting inherent risk of decertification in class action litigation). Setting aside the attorney manpower involved, the cost of litigating a lawsuit of this magnitude is substantial. All of these risks (and costs) were incurred in the face of the distinct possibility that this lawsuit might not succeed. This high-risk factor also justifies the amount of recovery sought in this petition.

The present case involved a number of significant risks. As with other large wage and hour and wage deduction class actions, there were a number of defenses to the substantive claims. Similarly, there were a number of defenses to the Minnesota wage deduction claims. Additionally, the substantive claims, including the state law wage deduction claims, presented potential class certification challenges. In addition to certification and substantive defense challenges, Plaintiffs have the additional hurdle to overcome of demonstrating that many of the putative class members had been misclassified as independent contractors.

Finally, the requested fees are reasonable because of Class Counsel's expertise in complex federal court litigation and the substantial time spent working on this case. As fully explained in the accompanying Declarations, Class Counsel spent more than 1,400 hours working on this case. Class Counsel exhaustively researched the substantive law, investigated claims, reviewed documents, prepared pleadings, drafted motions, and drafted or reviewed all of the appropriate documents necessary to carry out the

settlement. These related activities, driven by competent federal court practitioners, have led to an excellent result in a risky case.

Although the parties stipulated to conditional certification of the FLSA collective action, the parties were preparing for certification of the Rule 23 state law classes. The fact that this case settled prior to certification does not change the analysis. Commentators have noted that "one purpose of the percentage method" of awarding fees "is to encourage early settlements by not penalizing efficient counsel . . ." 3 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 1403, at 14-3 to 14-7 (3d ed. 1992). For this reason, "[p]rocuring a settlement, in and of itself, is *never* a factor that the district court should rely upon to reduce a fee award. To utilize such a factor would penalize efficient counsel, encourage costly litigation and potentially discourage able lawyers from taking such cases." Gunter v. Ridgewood Energy Co., 223 F.3d 190, 198 (3d Cir. 2000)(emphasis supplied).

In summary, the market rate for representation of similar litigation, at the "front end," is exactly what Class Counsel bargained for in the instant case. This result is consistent with the excellent results achieved for the class members, along with the substantial risk that Class Counsel faced as it worked towards that result. This result is also consistent with similar fee awards in other wage and overtime cases throughout the country, along with the standard fee in the prevailing market. For these reasons, Class Counsel respectfully request that this Court enter an appropriate order awarding Class Counsel $300,000.00 as a reasonable award of attorneys' fees and costs.

  **C.**  **Class Counsel's Request for Costs Is Reasonable.**

In addition to attorneys' fees, Class Counsel is entitled to reimbursement of its costs pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §1920, Fed. R. Civ. P. 54, and applicable state law. Plaintiffs have incurred costs of approximately $15,000.00 to date in the amount of approximately $15,300.00 and will incur additional costs in administering the distribution of settlement proceeds paying the mediator costs for the second mediation and responding to class member inquiries. These costs were necessary to protect and advance the interests of class members. As stated above, under the terms of the fee agreements, Class Counsel are entitled to request attorneys' fees *plus actual costs*. Instead of requesting a separate award of actual costs, however, Class Counsel ask that their costs be absorbed into the combined fees and costs request of $300,000.00. The Court should accordingly award Class Counsel these reasonable and necessary costs.

## CONCLUSION

On the basis of the argument and authority set forth above, the supporting declarations and the record in this matter, Plaintiffs respectfully request that this Court award those enhancement payments and costs and attorneys' fees requested in Plaintiffs' Petition for Class Counsel's Costs and Attorneys' Fees.

Respectfully submitted this 6th day of January, 2012.

**HAWKS QUINDEL, S.C.**

By: */s/ William E. Parsons*
William E. Parsons, State Bar No. 1048594
Email: wparsons@hq-law.com
David C. Zoeller, State Bar No. 1052017
Email: dzoeller@hq-law.com
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608/257-0040
Facsimile: 608/256-0236

**AXLEY BRYNELSON, LLP**

By: */s/ Michael J. Modl*
Michael J. Modl, State Bar No. 1011419
Email: mmodl@axley.com
Timothy D. Edwards, State Bar No. 1036836
Email: tedwards@axley.com
Steven M. Streck, State Bar No. 1013070
Email: sstreck@axley.com
Post Office Box 1767
Madison, Wisconsin 53701-1767
Telephone:  608/257-5661
Facsimile: 608/257-5444

**GINGRAS, CATES & LUEBKE**

By:  *s/ Heath P. Straka*
Heath P. Straka, State Bar No. 1031351
Email: straka@gcllawyers.com
Robert J. Gingras, State Bar No. 1002909
Email: gingras@gcllawyers.com
8150 Excelsior Drive
Madison, Wisconsin 53717-1904
Telephone:  608/833-2632
Facsimile: 608/833-2874